AO106(Rev.5/85) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person, property, or premises to be searched)

Offices of Doors of Hope
1328 Southern Avenue, S.E., 1ˢᵗ Floor
Washington, DC 20032

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

CASE NUMBER:

(Further described below)

I ___Michael Lasut_____ being duly sworn depose and say:

I am a(n) ___Detective with the Federal Bureau of Investigation_____ and have reason to believe
            (Official Title)

that  (name, description and or location)

        The offices of Doors of Hope, 1328 Southern Avenue, S.E., 1ˢᵗ Floor
        Washington, DC 20032.  See Attachment A

in the District of Columbia, there is now concealed a certain person or property, namely (describe the person or property to be
searched)
        See Attachment B

which is (state one or more bases for search and seizure set forth under Rule 41(c) of the Federal Rules of Criminal Procedure)
evidence and instrumentalities of crime and other contraband and property designed or intended for use as a means of
committing criminal offenses

concerning a violation of Title _18_ United States Code, Section(s) _1347_ .  The facts to support a finding of Probable
Cause are as follows:

SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN

Continued on the attached sheet and made a part hereof.    YES ☐   NO

John Griffith
Fraud and Public Corruption
(202)202-353-2453

Sworn to before me, and subscribed in my presence

_____
Date

_____
Name and Title of Judicial Officer

_____
Signature of Affiant
Michael Lasut, Detective
Federal Bureau of Investigation

at Washington, D.C.

_____
Signature of Judicial Officer

Affidavit of Special Agent Michael James Lasut
In Support of Search Warrant

1.      I, Michael James Lasut, being a duly sworn and appointed Special Agent of the Federal Bureau of Investigation (hereafter "FBI") hereby make the following statement, based upon information obtained by myself, other Special Agents of the FBI, Special Agents of the District of Columbia, Office of the Inspector General, Medicaid Fraud Control Unit, Special Agents of the United States Department of Health and Human Services, Office of Inspector General, Office of Investigations, and other sources to the investigation.

2.      I have been a Special Agent of the FBI for over four years.  I am currently assigned to the Washington Field Office where I conduct health care fraud investigations. Your affiant has training and experience in the enforcement of laws of the United States, including training in the preparation, presentation, and service of criminal search warrants.  I have duties that include investigations of, among other matters, mail fraud, wire fraud, health care fraud, false claims, and money laundering.  Through my training at the FBI Academy and my participation in searches and arrests conducted by my squad and other squads, I have assisted and/or participated in the preparation and/or execution of search and arrest warrants.    The statements contained

in this affidavit are based either on my personal knowledge or information obtained from other law enforcement officers. This affidavit does not set forth every fact discerned throughout the investigation; rather, it contains a summary of the investigation to date and sets forth only those facts that I believe necessary to establish probable cause to search the premises described herein.

## **OVERVIEW**

3.      Doors of Hope Medical Supply, L.L.C. (hereafter "Doors of Hope") is a durable medical equipment company located at 1328 Southern Avenue, Southeast, First Floor, Washington, D.C., 20032. Durable medical equipment (hereafter "DME") is defined by the District of Columbia Department of Health as "equipment that can withstand repeated use, primarily and customarily used to serve a medial purpose, and is generally not useful to a person in the absence of an illness or injury." Doors of Hope provides DME including, but not limited to, canes, hospital beds, and wheelchairs. The company received a Certificate of Organization from the District of Columbia on December 27, 2002.    According to District of Columbia Medicaid provider records and District of Columbia business records, Donna Marie Carney is the Chief Executive Officer of Doors of Hope.

4.    Claims data provided by Affiliated Computer Services, Incorporated (hereafter "ACS"), the contracted intermediary for Medicaid billing, revealed that for services rendered between February 27, 2003 and September 21, 2005,  Doors of Hope submitted approximately $572,600 in claims and was paid approximately $550,600. Of this payment, more than half was a result of claims for power wheelchairs.

5.    Evidence obtained as part of this investigation reveals that individuals connected with Doors of Hope submitted false and fraudulent Prior Authorization Request/Approval Forms in order  to bill Medicaid for DME not actually provided to beneficiaries or not covered under the Medicaid program.

6.    Your affiant believes that there is probable cause to believe individuals connected with Doors of Hope have committed violations of Title 18 United States Code Sections 1347 (Health Care Fraud).  This affidavit is submitted in support of an application for a search warrant for the location described in Attachment A (1328 Southern Avenue, Southeast, First Floor, Washington, D.C., 20032), and the facts set out in this affidavit show there is probable cause to believe that the items described in Attachment B will be found there.

## RELEVANT STATUTE

7.    Title 18, United States Code, Section 1347 makes it unlawful for anyone to knowingly and willfully execute or attempt to execute a scheme or artifice: 1) to defraud any health care benefit program; or 2) to obtain, by means of materially false or fraudulent pretenses, representations or promises, any of the money or property owned by, or in the custody and control of, any health care benefit program.

## <u>BACKGROUND OF THE MEDICAID PROGRAM</u>

8.    Medicaid is a health care benefit program and jointly funded cooperative venture between the Federal and State governments and the District of Columbia, established by the federal government under Title 18 of the Social Security Act of 1965, which provides medical and health-related services for some people with low incomes and limited resources.  The Medicaid program is administered by each state and the District of Columbia within the broad national guidelines provided by the Center for Medicare and Medicaid Services (hereafter "CMS"), the agency within The Department of Health and Human Services that regulates the Medicaid program.

9.    The District of Columbia, Department of Health, Medical Assistance Administration (hereafter "MAA"), provides specific policies and procedures for healthcare providers who participate in the District of Columbia Medicaid Program.

Among these are specific procedures for filing claims for reimbursement and for the creation and maintenance of medical records. The MAA provides specific instructions for billing of Durable Medical Equipment. These instructions can be found in the MAA Provider Billing Manual for Durable Medical Equipment made available to every participating provider (DME Provider Manual). Specifically, these instructions ensure that the need for supply and/or equipment relates to the diagnosed condition provided in the Prior Authorization Approval/Request Form (Form 719A). The Form 719A form is required to be submitted to MAA for every DME item over $250 for which DME providers will be billing pursuant to Medicaid.

10.    Items requested under the Durable Medical Equipment Program must be suitable for home use by the covered individual and only supplies, equipment and appliances that are medically necessary are covered. "Medical Necessity" of "Medically Necessary Service" means medical, surgical, or other services required for the prevention, diagnosis, cure, or treatment of a health related condition including services necessary to prevent a detrimental change in either medical or mental status. Medically necessary services must be provided in the most cost effective and appropriate setting and shall not be provided solely for the convenience of the member

or service provider.

11.    CMS contracts with intermediaries to process and reimburse DME providers for reasonable claims relating to pre-authorized equipment provided to Medicaid recipients.  In the District of Columbia, the intermediary is ACS, which processes and reimburses claims submitted by Doors of Hope and other DME providers operating in the District of Columbia.

12.    The District of Columbia, Department of Health, DME Provider Manual, contains procedures for DME providers including the following:

1)  "All DME supplies must be ordered by a physician or authorized prescriber and be medically necessary to treat a health care condition."

2)  "Providers shall retain for a minimum of six years (unless otherwise specified), medical and fiscal records that fully disclose the nature and extent of the services rendered to recipients."* "The term "readily available" means that the records must be available at the provider's place of business."

3)  In order to be covered for reimbursement as durable medical equipment under the District of Columbia Medicaid program, items must be suitable for or primarily used in the home setting.  (This generally does not include power

scooters such as those described below).

4) When submitting Medicaid claims, Health Care Financing Administration's Common Procedure Coding System (hereafter "HCPCS") codes are used to define the DME provided. One of these codes is E1399 which is a miscellaneous HCPCS code to be used only when the requested item differs significantly in the narrative description from the established code. District of Columbia Medicaid regulations dictate any claim submitted under this code needs to be accompanied by a complete description of the item being supplied and a copy of the supplier's invoice or the dealer cost information to document the cost of the item. As there is no specific rate of reimbursement associated with E1399, this supporting documentation is used in determining the rate of reimbursement for the claim. The HCPCS codes that specifically reference power wheelchairs are K0011 and K0014.

5) Claims over $250 must be submitted with a Form 719A. This form must be signed by the physician or other authorized prescriber who ordered the equipment, stating the equipment is medically necessary to treat a health care condition (hereafter "Requesting Provider").

## COMPANY BACKGROUND

13.     Doors of Hope became a District of Columbia Medicaid provider of DME on or around March 25, 2004 by having submitted a completed Pharmacy/DME Provider Application (hereafter "Provider Application") which was signed by the Chief Executive Officer, Donna Marie Carney.  The application listed the location of the business as 1328 Southern Avenue, Southeast, Washington, D.C., 20032.  This location was also listed as the address to send payments and all other correspondence.  This remains the current address and location for Doors of Hope on file with Medicaid.

14.     In support of its Provider Application, Doors of Hope submitted a copy of their Master Business License Class B issued by the Government of the District of Columbia.  This license was issued on February 27, 2003 and lists the business location and mailing address for Doors of Hope as 1328 Southern Avenue, Southeast, Washington, D.C., 20032.

15.     In support of its Provider Application, Doors of Hope submitted a copy of the Certificate issued on November 6, 2003 by the Government of the District of Columbia, Department of Regulatory Affairs, stating Doors of Hope Medical Supply,

L.L.C., is a company in Good Standing having received their Articles of Organization on December 27, 2002. The Articles of Organization for Doors of Hope stated the purpose of its organization was to "engage in the sale of medical supplies and equipment to medical establishments, nursing facilities, respite care centers, and to individual at-home medial patients."

16.    In support of its Provider Application, Doors of Hope submitted a copy of a Certificate of Occupancy from the Government of the District of Columbia, Department of Consumer and Regulatory Affairs, stating Doors of Hope had a valid permit for 1328 Southern Avenue, Southeast, First Floor, Washington, D.C., 20032.

17.    Following the Doors of Hope's submissions to ACS of the Form 719 Prior Authorization Approval/Request Forms and electronic billing requests, Doors of Hope receives Medicaid payments in the form of checks via the United States Postal Service to 1328 Southern Avenue, Southeast, First Floor, Washington, D.C. 20032. The checks are cashed or deposited and are negotiated through bank accounts or other financial accounts.

## DETAILS OF THE INVESTIGATION

18.    As part of the investigation, among other things I have reviewed written claims

submitted by Doors of Hope to obtain payment from Medicaid and have interviewed

beneficiaries listed on the claims.   These claims include the following:

19.    Using code E1399, Doors of Hope submitted a Form 719A for a power

wheelchair provided to a Medicaid beneficiary (hereafter "B-1") on or about August

27, 2004.  As part of the Form 719A, Doors of Hope submitted a quote from Pride

Mobility Corporation for a Jazzy 1420 power wheelchair listing the manufacturers

suggested retail price as $13,876.00.  The quote appeared to be printed from the

internet and was dated April 16, 2004 at the bottom of page 2 and listed the internet

address http://www.mypride.com/soanew.asp?quote_id=32270812 at the bottom of

the page 1 and http://www.mypride.com/soanew.asp?quote_id=32270782 at the

bottom of page 2.  The Form 719A listed Khosrow Davachi as the Requesting

Provider and walker with seat and power wheelchair under the description of

"services, durable medical equipment, or supplies."  Doors of Hope was paid $13,500

for this item, the maximum allowed for code E1399.

20.    An interview of B-1 revealed he/she visited Doors of Hope on or around August

27, 2004 and requested a walker with a seat.  A Doors of Hope employee provided B-

1 with the walker and talked with him/her about the possibility of getting a power

wheelchair.  B-1 provided the employee with his/her address, but never heard of the power wheelchair again.  B-1 never received a power wheelchair from Doors of Hope or any other provider.  B-1 does not recognize the name Khosrow Davachi.

21.    Using code K0014, Doors of Hope submitted a Form 719A for a power wheelchair provided to a Medicaid beneficiary (hereafter "B-2") on or about August 26, 2004.  The Form 719A listed Khosrow Davachi as the Requesting Provider and "Power Wheelchair (Big Boy)" under description of services, durable medical equipment or supplies.  "Big Boy" appears to be a moniker for a Jazzy 1420 power wheelchair.  Attached to the Form 719A was a quote from Pride Mobility Corporation for a Jazzy 1420 power wheelchair that is an identical copy of the one submitted in connection with customer B-1.  Doors of Hope was paid $13,876 for this claim.

22.    An interview of B-2 revealed he/she visited Doors of Hope on or about August 26, 2004 to request a "scooter."  Prior to the visit, B-2 noticed a stranger with a scooter, asked her where she got it, and she responded Doors of Hope.  B-2 traveled to Doors of Hope and told the employee working there he/she wanted a "scooter" and provided no other details.  The employee took his/her information, verified his/her Medicaid eligibility, and asked that he/she have his/her physician fill out a form and

fax it back to Doors of Hope. B-2 did as instructed and a few weeks later was contacted by someone at Doors of Hope to come and pick up his/her scooter. B-2 did not receive a Jazzy 1420 power wheelchair, but instead appears to have received a Pride Mobility 3-Wheel Electric Scooter. The approximate retail price of this scooter is $1995.00. A review of the Form 719A submitted in support of B-2's transaction has Khosrow Davachi listed as the Requesting Provider, rather than B-2's physician who, according to B-2, returned a form provided by Doors of Hope concerning the scooter. B-2 does not recognize the name Khosrow Davachi.

23.    Using code E1399, Doors of Hope submitted a Form 719A for a power wheelchair provided to a Medicaid beneficiary (hereafter "B-3") on or about September 7, 2004. This Form 719A also includes the identical quote from Pride Mobility Corporation for a Jazzy 1420 power wheelchair as referenced above. This Form 719A lists Edger Potter as the Requesting Provider and powerchair under description of services, durable medical equipment, or supplies. Doors of Hope was paid $13,500 for this item, the maximum allowed for code E1399.

24.    An interview of B-3 revealed he/she visited Doors of Hope on or around September 7, 2004. Prior to this visit, he/she saw a scooter on television and decided

to get one.  B-3 went to Doors of Hope and was told by an employee there to go to his/her doctor and ask for one.  B-3 then visited his/her doctor, Edger Potter, and stated he/she wanted a scooter to help him/her get around.  Potter completed a form which B-3 took to Doors of Hope.  A week later a scooter (most likely a Pride Mobility 3-Wheel Electric Scooter) was delivered to B-3's residence, rather than the Jazzy 1420 power wheelchair as detailed in the submitted Form 719A.

## BASIS FOR SEARCH

25.    Based on your affiant's training, experience, and participation in this and other investigations involving health care fraud, I  know:

1) businesses and corporations typically maintain books and records at their locations of business.  I have further found that it is a common practice in the business community to maintain journals, ledgers, and other records showing the receipt and disposition of funds.  I have also found in my experience in dealing with business records that the flow of funds into and out of a company can be tracked by following the "paper trail."  The paper trail is created by the entries into the business records and bank accounts, and by the documents received or prepared to support the transaction. Additionally, businesses that receive reimbursements

from Medicaid maintain patient files at their business. These patient files, among other things, typically contain correspondence from the patient, authorization for services, documentation on when a medical service was provided, and billing/payment information.

2) business records of individuals, businesses, and companies are used as a basis for the preparation of business reports, income tax returns, and Medicaid claims. I have also found that business records are ordinarily kept for extended periods of time, often several years, in order to provide support for revenue and expense transactions if questioned by Medicaid auditors, Internal Revenue Service examiners, or other auditors, at a later date, among other reasons.

3) individuals participating in businesses that receive reimbursements from the Medicaid program often use computers and other electronic devices as part of their record-keeping measures, especially when the business is required to maintain records to support its Medicaid claims and files those claims electronically, as is the case in this investigation.

## **ELECTRONIC EVIDENCE**

1) I know that computer hardware, software, documentation, passwords, and data

14

security devices may be important to a criminal investigation in two distinct and important respects that:

(a) objects themselves may be instrumentalities, fruits, or evidence of crime, and/or

(b) objects may have been used to collect and store information about crimes (in the form of electronic data). Rule 41 of the Federal Rules of Criminal Procedure permits the government to search and seize computer hardware, software, documentation, passwords, and data security devices which are instrumentalities, fruits, or evidence of crime; or storage devices for information about crime.

2) Based upon the facts set forth above, I believe there is probable cause that computer hardware, software, related documentation, passwords, data security devices (as described below), and data found at Doors of Hope, were integral tools of the crime discussed in this affidavit and constitute the means of committing it. As such, they are instrumentalities and evidence of the violation designated. Rule 41 of the Federal Rules of Criminal Procedure authorizes the government to seize and retain evidence and instrumentalities of a crime for a reasonable time, and to examine, analyze, and test them.

3) <u>Hardware</u>: Computer hardware consists of all equipment which can receive,

15

capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Hardware includes, but is not limited to, any data-processing devices (such as central processing units; internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, video display monitors, and related communications devices (such as cables and connections, as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (such as physical keys and locks).

4) <u>Software</u>: Computer software is digital information that can be interpreted by a computer and any of its related components to direct the way they work. Software is stored in electronic, magnetic, or other digital form, including zip drives). It commonly includes programs to run operating systems, applications (like tax preparation, word-processing, or spreadsheet programs), and utilities.

5) <u>Documentation</u>: Computer-related documentation consists of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, software, or other related items.

6) <u>Passwords and Data Security Devices</u>:  Computer passwords and other data security devices are designed to restrict access to or hide computer software, documentation, or other programming code.  A password (a string of alphanumeric characters) usually operates a sort of digital key to unlock particular data security devices.  Data security hardware may include encryption devices, chips, and circuit boards.  Data security software or digital code may include programming code that creates test keys or hot keys, which perform certain pre-set security functions when touched.  Data security software or code may also encrypt, compress, hide, or booby-trap protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

7) Based upon my knowledge, training and experience, and consultations with computer specialists from the Federal Bureau of Investigation, I know that searching and seizing information from computers almost always requires agents to seize most or all electronic storage devices (along with related peripherals, as discussed below) to be searched later by a qualified computer expert in a laboratory or other controlled environment.  This is true because of the following:

8) <u>Volume of Evidence</u>:  Computer storage devices (like hard disks, and diskettes)

can store the equivalent of thousands of pages of information. Additionally, a suspect may try to conceal criminal evidence; he or she might store it in random order with deceptive file names. This may require searching authorities to examine all the stored data to determine which particular files are evidence or instrumentalities of crime. This sorting process can take weeks or months, depending on the volume of data stored, and it would be impractical to attempt this kind of data search on site.

9) <u>Technical Requirements</u>: Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert is qualified to analyze the system and its data. However, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to inadvertent or intentional modification or destruction (both from external sources or from destructive code imbedded in the

system as a booby-trap), a controlled environment is essential to its complete and accurate analysis.

10) Based upon my knowledge, training and experience and consultations with forensic computer examiners, I know that searching computerized information for evidence or instrumentalities of crime commonly requires agents to seize most or all of a computer system's input/output peripheral devices, related software, documentation, and data security devices (including passwords) so that a qualified computer expert can accurately retrieve the system's data in a laboratory or other controlled environment. This is true because of the following:

a) The peripheral devices which allow users to enter or retrieve data from the storage devices vary widely in their compatibility with other hardware and software. Many system storage devices require particular input/output (or I/O) devices in order to read the data on the system. It is important that the analyst be able to properly re-configure the system as it now operates in order to accurately retrieve the evidence listed above. In addition, the analyst needs the relevant system software (operating systems, interfaces, and hardware drivers) and any applications software, which may have been used to create the data (whether stored

on hard drives or on external media), as well as all related instruction manuals or other documentation and data security devices.

b) If, after inspecting the I/O devices, software, documentation, and data security devices, the analyst determines that these items are no longer necessary to retrieve and preserve the data evidence, the government will return them within a reasonable time.

c) Data analysts may use several different techniques to search electronic data for evidence or instrumentalities of crime.  These include, but are not limited to, the following:  examining file directories and subdirectories for the lists of files they contain; opening or reading the first few pages of selected files to determine their contents; scanning for deleted or hidden data and searching for key words or phrases ("string searches").

11) This specifically excludes a search of any kind of unopened electronic mail, and no warrant is herein sought for such unopened electronic mail.  If unopened electronic mail is to be searched, a separate warrant will be sought supported by probable cause.

## <u>CONCLUSION</u>

26.    This affidavit seeks authorization for a search warrant of 1328 Southern

Avenue, Southeast, First Floor, Washington, D.C., 20032, on the grounds that there is probable cause to believe Doors of Hope at said address contains evidence or there are fruits, and instrumentalities of violations of Title 18 United States Code Section 1347 (Health Care Fraud).

27.    Based upon the foregoing and upon my training and experience in the investigation of health care fraud, I believe probable cause exists that at the premises listed in Attachment A there will be found the following items of evidence; to wit, records, books, receipts, notes, and ledgers, or other documents which reflect fraudulent activities which are evidence of violations of Title 18 United States Code Section 1347 (Health Care Fraud).  These items of evidence are further described in Attachment B.

28.    WHEREFORE, based on the information provided in this affidavit, your affiant believes probable cause exists for a search and seizure warrant to be issued for the above identified and described location, for evidence of violations of Title 18 United States Code Section 1347 (Health Care Fraud).

_____
Michael James Lasut, Special Agent
Federal Bureau of Investigation


Subscribed and sworn to before me this _____ day of _____, 2006.



_____
UNITED STATES MAGISTRATE JUDGE

**Attachment A**

**<u>Description of 1328 Southern Avenue, Southeast, First Floor, Washington, D.C., 20032</u>**

This multi story building is located along the northern side of Southern Avenue, Southeast, in Washington, D.C., slightly northeast of the intersection of Wheeler Road, Southeast, and Southern Avenue, Southeast.  The building is brown in color and bears the numbers "1328."  An exterior, ground level, entrance has sliding glass doors below a blue sign with white lettering reading "Medical Service Building."  Entering these doors leads to a small lobby area where, to the left, are a door and a large glass window, through which can be seen scooters on display. Taped to the window is a sheet of paper which reads "Doors of Hope Medical."  A listing of business hours and credit cards accepted are posted on the window.

## ATTACHMENT B

**The Following Items Are To Be Seized:**

1.      Patient medical files and/or dossiers and billing files including, but not limited to,  insurance claim forms, patient sign up sheets, shipping slips, doctor authorization's for services, any correspondence to and from the patient, billing statements, bills, receipts, purchase records, correspondence, contracts/agreements, appointment books/calendars, sign-in sheets,  telephone message logs, directories, notes, ledgers, employee/employer documents,   manual or electronic telephone directories and their contents,  and any other documents or stored data in any form concerning actual or purported  provision of medical services or supplies; and billing and collecting payment for same; and any correspondence or records about same.  If documents from other DME companies are found in the file along with documents from the above-mentioned entities and persons, the entire patient file will be seized to preserve the file's integrity.

2.      All passwords, instructions, and manuals for software programs used in the office for maintaining medical records, billing data, insurance claims data, appointment information, and any other patient information.

3.      All records and information relating to communications about the patients by and between Doors of Hope and any patient, insurance company, health benefits plan or medical doctor, including but not limited to, written correspondence, inter-office memoranda, facsimile messages, and telephone messages.

4.      All records and correspondence to or from insurance companies related to any billing matter for services provided.  Documents related to and audits performed or investigations conducted by any insurance companies.

24

5.      All personal and business financial records relating to transactions, including but not limited to, business and personal checks, checking, savings, and other financial institution account statements, deposit, withdrawal and ATM slips, credit/debit card slips and statements, credit /financing applications and statements, credit identifications, account numbers, purchase records for supplies or equipment.

6.      All records relating to access numbers, storage facility rental agreements and/or contracts, keys to storage lockers or other storage-type facilities, or U.S. Mail depository access keys.

7.      Documents relating to the interpretation, preparation, or submission of health care claims, claim forms, billing instructions, coding instructions, and explanation of benefits forms. Records, correspondence, reference materials, and any other materials provided, produced, or generated by insurance companies relating to billing codes, billing procedures, handling of claims, types of coverage provided by insurance companies.

8.      Records relating to the receipt of payments for medical services provided to patients, including but not limited to accounting records, ledgers, journals, bank statements, and any other document, journal, or notebook containing entries of cash, personal checks, and credit card payments received.

9.      All personnel files and records sufficient to identify current and former employees or contractors associated with Doors of Hope, including date of birth, job title and description, dates and scheduled hours of employment, and home addresses and telephone numbers.

10.     All records relating to the procurement of DME by or for Doors of Hope, including, but not limited to, purchase orders, receipts, documentation of payments, and shipping orders.

11.     All correspondence between Doors of Hope and any third party

provider of DME.

12.     All data, records, and information described in the above paragraphs in this Attachment that may be stored in electronic devices capable of analyzing, creating, displaying, converting, storing or transmitting electronic computer impulses or data including, but not limited to, floppy disks, Zip disks, compact disks, electronic data processing and storage devices, computers and computer systems, and internal and/or peripheral storage devices. In addition, the systems documentation, operating logs and documentation, passwords needed to access those systems, and software and instruction manuals related to such electronic devices.

13.     If a determination is made during the search by a Special Agent assigned to the computer aspect of this search that by extracting and copying information, described above, contained in the computer or computer system and related computer equipment and storage devices, we cannot be assured of the recreation or the exact computer environment at the premises being searched, in accordance with good evidence processing practices, the following items are included for seizure:

-computers and computer equipment, including processing unit and circuit boards, attached or unattached to the computer; magnetic storage media such a floppy diskettes, hard disk, and magnetic computer tape, and magnetic storage devices, such as read/write devices and read only devices, whether internal or external;

-photo optical storage media; including but not limited to, compact disk type storage devices which are forms of storage devices for computer readable information;

-computer peripheral devices attached or unattached to the computer including monitors, printers, keyboards, modems, acoustic couplers, or other physical devices which service to transmit or received information to or from a computer;

26

-documents which serve the purpose of explaining the way the computer hardware, programs, and data are used, including but not limited to manuals, printouts of computer programs, data files or other information which had been or continues to be stored electronically or magnetically in a computer system;

-memory telephones, automatic dialing services, telephone answering machines, or any other electronic device for the storage of names, addressed, and telephone numbers.

All of the above and any other evidence being fruits, instrumentalities and evidence of violations of Title 18 United States Code Sections 1347 (Health Care Fraud).

27